J-S03002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.N., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2598 EDA 2022 |

Appeal from the order entered September 9, 2022
In the Court of Common Pleas of Monroe County Orphans' Court at
No(s): 2022-00023

| | | |
|---|---|---|
| IN THE INTEREST OF: L.N., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2599 EDA 2022 |

Appeal from the order entered September 9, 2022
In the Court of Common Pleas of Monroe County Orphans' Court at
No(s): 2022-00024

| | | |
|---|---|---|
| IN THE INTEREST OF: T.N., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2600 EDA 2022 |

Appeal from the order entered September 9, 2022
In the Court of Common Pleas of Monroe County Orphans' Court at
No(s): 2022-00025

BEFORE:  BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 21, 2023**

A.A. ("Mother") appeals from the September 9, 2022 orders granting the petitions filed by the Monroe County Children and Youth Services ("CYS") to involuntarily terminate her parental rights to her son, Lo.N., born in April 2012, and her daughters, Li.N., born in February 2018, and T.N., born in February 2021.[1]  We affirm.

The orphans' court summarized the factual history as follows:

> [CYS] has had a history with the family since October 2020, shortly after [the children's father] passed away.  At this time, Mother was testing positive for various substances, including amphetamines, methamphetamines, and opiates.  The family then moved to New Jersey [to reside with the maternal grandparents ("Maternal Grandparents")] and a referral was made to New Jersey Division of Child Protection and Permanency (DCPP).  DCPP notified [CYS] that Mother was potentially residing in Kunkletown, Pennsylvania with a known drug dealer.  Mother submitted a urine screen and was positive for cocaine, amphetamines, methamphetamines, morphine, fentanyl, and methadone.
>
> After reports that Mother was residing again in Pennsylvania, [CYS] along with law enforcement conducted a home visit on May 25, 2021.  During the home visit[, the two younger children] . . . were with Mother in the home in Pennsylvania.[2]  At this home visit, a pipe was found in the room Mother and [the children were sharing] along with heroin, and heroin was found in [Li.N.]'s blanket.  Subsequent to this home visit, Mother was arrested and charged with . . .    child

---

[1] T.N., the father of all three children, is deceased.  N.T., 9/7/22, at 4.

[2] CYS caseworker, Victoria Lipyanic, testified, that Lo.N. remained in New Jersey with maternal grandparents, whom CYS believed had their own substance abuse problems. *Id*. at 8, 10.

endangerment and possession.[3]  Emergency protective custody was requested and granted by the [c]ourt on May 26, 2021. Shelter care was subsequently granted on May 27, 2021[,] and [Lo.N., Li.N., and T.N.] remained with their paternal grandparents [("Paternal Grandparents")].    [Lo.N., Li.N., and T.N.] were adjudicated [d]ependent. . . on June 9, 2021.

In the months following, Mother was communicating with [CYS], regularly visiting with [Lo.N., Li.N., and T.N.], and completed an online parenting class.  Throughout August of 2021, Mother was testing positive on drug screens for fentanyl, morphine, and codeine.  On November 5, 2021, Mother was incarcerated following a bench warrant being issued for her failure to appear at arraignment for the child endangerment charges.  In December of 2021, Mother enrolled in a detox program however refused to stay an additional two weeks for treatment.  Mother has not submitted a drug screen to [CYS] since April 2022.  The last drug screen was positive for methamphetamine, morphine, and codeine.  Mother told [CYS] she would be seeking a mental health therapist and an in-patient substance abuse provider but has not provided the agency with the name or address of either provider.  Mother had goals set by [CYS] towards reunification and has made little progress on them.

Orphans' Court Opinion, 11/8/22, unnumbered at 3 (unnecessary capitalization omitted).

On June 10, 2022, CYS filed petitions for the termination of parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  The orphans' court held a hearing on the petitions on September 7, 2022. Lo.N., Li.N., and T.N., then age ten, four, and one, respectively, were represented

---

[3] At the time of her arrest, Mother had an open bench warrant and a pending violation of a pre-trial intervention program related to prior charges. *Id*. at 8, 11.  CYS supervisor, Claudia Penn, testified that on September 2, 2022, one week before the evidentiary hearing, Mother pled guilty to child endangerment graded as a first-degree misdemeanor and retail theft.  The certified record does not disclose Mother's subsequent judgment of sentence, but our review of the criminal docket reveals that her maximum sentencing exposure for each of the two misdemeanors was five years of imprisonment.

by Megan Reaser, Esquire, pursuant to 23 Pa.C.S. § 2313(a).[4] Mother was present and represented by counsel. CYS presented the testimony of three caseworkers and/or supervisors involved with the family: Victoria Lipyanic, Claudia Penn, and Trina Breland-Hope, as well as K.N. ("Paternal Grandmother"). Additionally, it introduced eighteen exhibits consisting of various correspondence, reports, notes, medical records, and lab results which were admitted without objection. N.T., 9/7/22, at 42. Mother presented the testimony of C.A. ("Maternal Grandmother").

On September 12, 2022, the orphans' court involuntarily terminated Mother's parental rights to Lo.N., Li.N., and T.N. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). Thereafter, Mother timely filed notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court consolidated the appeals *sua sponte*.

Mother presents the following issue for our review: "Whether the court erred in finding that [CYS] proved the elements of [23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b)] through clear and convincing evidence?" Mother's brief at 4 (unnecessary capitalization omitted) (suggested answer omitted).

---

[4] Lo.N. articulated his desire to remain with Paternal Grandparents. N.T., 9/7/22, at 45, 62. While Attorney Reaser neglected to file a brief in this Court, she argued in support of termination at the termination hearing. *Id*. at 88-89.

We review the involuntary termination of parental rights for an abuse of discretion, which our Supreme Court has explained "is limited to a determination of whether the decree of the termination court is supported by competent evidence." *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). An appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id*.

Termination of parental rights is governed by § 2511 of the Adoption Act. If the trial court determines the petitioner established grounds for termination under § 2511(a) by clear and convincing evidence, then the court must assess the petition under § 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

In the case *sub judice*, the orphans' court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

Here, we analyze the court's termination decree pursuant to § 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

With regard to the termination of parental rights pursuant to § 2511(a)(2), we have indicated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the

> causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re S.C.*, 247 A.3d 1097, 1104 (Pa.Super. 2021) (quoting *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015)) (internal citation omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Matter of Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa.Super. 2017) (quoting *In re N.A.M.*, 33 A.3d 95, 100 (Pa.Super. 2011)). As such, "A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re S.C.*, *supra* at 1105 (quoting *In re Z.P.*, 994 A.2d at 1118).

In concluding that CYS satisfied the statutory grounds to terminate Mother's parental rights pursuant to § 2511(a)(2), the orphans' court emphasized the children's sustained exposure to Mother's substance abuse. The court reasoned, "Mother has continued to struggle with substance abuse. This substance abuse was not isolated and[,] also significa[nt], [Lo.N., Li.N., and T.N.] were present while Mother was in possession of abovementioned controlled substances." Orphans' Court Opinion, 11/8/22, unnumbered at 6. The court also considered Mother's failure to pursue additional treatment in

December 2021 and her refusal to identify her substance abuse provider. *Id*.

Finally, the court referenced Mother's conviction for child endangerment

stemming from her possession of heroin during the May 2021 incident that

lead to [Lo.N.'s, Li.N.'s, and T.N.'s] placement. *Id*.

While Mother acknowledges her substance abuse and further concedes

her unsuccessful attempts at rehabilitation, she baldly suggests that this

incapacity can be remedied. Mother's brief at 10-11. Mother argues:

> Here the obvious incapacity is [M]other's drug use. Evidence in
> this case clearly establishes that [M]other has made multiple
> attempts at getting clean. She had tried both inpatient and
> outpatient and was able to provide some clean screens to the
> agency. It's well known that sobriety takes time and is often a
> lifelong process. There's nothing to indicate that this incapacity
> cannot be remedied. Mother has certainly not refused services
> but perhaps just hasn't found the right one that works for her.

*Id*.

A review of the certified record belies Mother's contention and supports

the orphans' court's finding of grounds for termination under § 2511(a)(2).

Significantly, the certified record reveals a history of substance abuse to which

the children were exposed. At the time of placement for Lo.N., Li.N., and T.N.

in May 2021, heroin was found in a room shared by Mother, Li.N., and T.N.,

resulting in Mother pleading guilty to, *inter alia*, child endangerment. N.T.,

9/7/22, at 10, 40, 53-54. She continued to test positive for multiple

substances through her final test submitted in April 2022. *Id*. at 15-16, 24,

30-32, 35, 51; *see also* Petitioner's Exhibits 6 & 7. Although Mother

participated in an in-patient detoxification program for two weeks between

November 30, 2021 and December 13, 2021, she ultimately discharged herself and declined additional treatment. N.T., 9/7/22, at 29, 52. While she reportedly returned to outpatient treatment, Mother failed to execute releases for CYS to document those efforts. *Id*. at 30. CYS continued to contact Mother regarding treatment, but those efforts were also unproductive. *Id*. at 32-37. Notably, Trina Breland-Hope, the caseworker assigned to the family at the time of the evidentiary hearing, testified that Mother still had not engaged in in-patient treatment. *Id*. at 61.

Given Mother's enduring substance abuse problems, it is unclear when, if ever, Mother will be in a position to care for Lo.N., Li.N., and T.N. and provide them with the safety and stability that the children require. This reality is untenable for the children, who at the time of the termination hearing, had been in care for almost 16 months. As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006). Based on the foregoing, we discern no abuse of discretion in the orphans' court's conclusion that the termination of Mother's parental rights is warranted pursuant to § 2511(a)(2). Phrased differently, the certified record demonstrates that Mother's continued incapacity due to chronic substance abuse has caused Lo.N., Li.N., and T.N. to be without essential parental care, control, or subsistence necessary for

their physical or mental well-being. Further, the conditions and causes of Mother's incapacity cannot or will not be remedied. Accordingly, we do not disturb the orphans' court's finding that CYS established the statutory grounds to terminate Mother's parental rights pursuant to § 2511(a)).

Next, we review the orphans' court's needs and welfare analysis pursuant to § 2511(b). Our Supreme Court outlined this inquiry as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). *In In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, *supra* at 267.

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, § 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted). Moreover, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *T.S.M.*, *supra* at 267. The High Court has directed that, in weighing the bond considerations pursuant to § 2511(b), "courts must keep the ticking clock of

- 10 -

childhood ever in mind." *Id*. at 269. The *T.S.M.* Court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

Furthermore,

While a parent's emotional bond with his or her child is a major aspect of the § 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, *supra* at 1219 (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)) (cleaned up).

Instantly, in determining that the termination of Mother's parental rights would serve Lo.N.'s, Li.N.'s, and T.N.'s needs and welfare pursuant to § 2511(b), while recognizing Mother's visitation, the orphans' court noted her failure to provide comfort, security, and stability. Orphans' Court Opinion, 11/8/22, unnumbered at 9. In contrast to Mother's noted inaction, the court highlighted the security and stability provided by Paternal Grandparents, concluding, "We believe and determine the best interest of [Lo.N., Li.N., and T.N.] will be served by termination of parental rights of Mother. [Lo.N., Li.N., and T.N.] are doing well residing with [P]aternal [G]randparents. [P]aternal [G]randparents are providing [Lo.N., Li.N., and T.N.] with a stable, protective,

and loving household. Considering these factors, termination of parental rights is warranted." *Id*.

Mother argues that the record reveals a bond between herself and Lo.N. and Li.N., who refer to her as "mom," as well as a bond between [Lo.N., Li.N., and T.N.] and Maternal Grandparents. Mother's brief at 14. She maintains that CYS failed to present "any evidence to the status of the bond between [Lo.N., Li.N., and T.N.] and [M]other, and what effect severing that bond could have on [Lo.N., Li.N., and T.N.]." *Id*.

Again, the certified record supports the orphans' court's termination of Mother's parental rights. Significantly, at the time of the hearing, Lo.N., Li.N., and T.N., then ages ten, four, and one year old, respectively, had been removed from Mother's care for almost 16 months. N.T., 9/7/22, at 10-12. While Mother was afforded visitation, in March 2022, her visitation was decreased to biweekly sessions "because she had missed numerous visits with [the children]." *Id*. at 34. Then, in May 2022, after missing over six weeks of visitation, Mother's visitation was "paused." Permanency Review Orders, 5/23/22; N.T., 9/7/22, at 39. As explained by CYS supervisor, Claudia Penn, "[Mother] had missed many visits at that time, so her visits were going to be paused until she contacted the agency to resume her visits." N.T., 9/7/22, at 39. While Mother was eventually offered bi-weekly visitation, she missed

"almost all" of her visits and was unresponsive.[5]  *Id*. at 46, 52, 63-64; *see also* Petitioner's Exhibit 18.  Mother participated in a two-minute Zoom visit on June 11, 2022.  N.T., 9/7/22, at 57.  Ms. Breland-Hope testified, "[Mother] got on for about two minutes to say hi and got disconnected and never logged back in."  *Id*.  The provider notes admitted as Exhibit 18 detail that Mother left the visit without returning or responding to subsequent communication.  Petitioner's Exhibit 18.

Mother also attended an in-person visit with Maternal Grandparents on July 1, 2022, which CYS and the service provider accommodated upon request.  N.T., 9/7/22, at 46, 57-58.  Thereafter, Mother was a "no show" for two scheduled Zoom visits in July.  *See* Petitioner's Exhibit 18; *see also* N.T., 9/7/22, at 58-59.  Mother's last contact with Lo.N., Li.N. and T.N. was on August 13, 2022, via Zoom.  N.T., 9/7/22, at 52, 59-60, 65.

Moreover, and more importantly, Lo.N., Li.N., and T.N. have resided with Paternal Grandparents since May 2021, approximately 16 months at the time of the hearing.  *Id*. at 10-12.  Paternal Grandparents are a permanent resource with whom Lo.N., Li.N., and T.N. are thriving.  *Id*. at 33, 37, 62-63.  Ms. Breland-Hope described, "They're doing great there."  *Id*. at 62.  Likewise, the CYS Supervisor, Ms. Penn, did not observe a bond between Mother and Li.N. and T.N.  *Id*. at 49-50.  She did note that the oldest child, Lo.N., shares

---

[5] Mother's visits took place *via* Zoom because she resided in New Jersey.  N.T., 9/7/22, at 46, 51, 57.  Throughout this period, CYS and the service provider attempted regular contact with Mother regarding visitation.  *See id*. at 58-59; *see also* Petitioner's Exhibit 18.

a bond with Mother. Despite that bond, however, "[Lo.N.] did not want to live with [Mother] because he did not think he would be safe with her." *Id*. at 35, 49-50. Rather, as related by both Ms. Penn and Ms. Breland-Hope, Lo.N., expressed his desire to remain with Paternal Grandparents while maintaining contact with Maternal Grandparents. *Id*. at 35, 45-46, 62. Significantly, Ms. Breland-Hope indicated that despite expressing a desire to maintain contact with Maternal Grandparents, Lo.N. "doesn't mention mom." *Id*. at 69-70.

As demonstrated by the foregoing evidence, the certified record supports the orphans' court's finding that terminating Mother's parental rights serve the developmental, physical, and emotional needs and welfare of Lo.N, Li.N., and T.N. Thus, despite evidence of a residual bond between Mother and ten-year-old Lo.N., we discern no abuse of discretion in the termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b), especially considering the child's stated preference to remain with his Paternal Grandparents. *See In re Adoption of C.D.R.*, *supra* at 1219 ("In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.").

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/21/2023</u>